Good morning. Richard Williams on behalf of Plaintiff and Appellant, Brand Tarzana Surgical Institute. I think what I said about the last case applies here also. This does not seem to be a very complicated case. Fifteen minutes is assigned by the clerk, but I think this argument can probably be presented in far less time than that. I actually quite agree, Your Honor. I think that the issues have been fully briefed, exhaustively briefed, in my briefing and in the response briefing. There are, however, five separate and distinct legal grounds on which we believe the district court should clearly be reversed. And if the court were to decide our way on any one of those five grounds, it should support a reversal. But I'd like to ask a question first about standing. The anti-assignment provision here states unambiguously that direct payments to a provider of care do not imply an enforceable assignment of welfare plan benefits. How do you have standing to sue for patient benefits in light of this provision? Well, there are two bases for the standing. Of course, the standing comes from the derivative standing that Brand has as an assignee of the claims of the patient. But the clause that Your Honor cited is not unambiguous in any sense. There are three separate anti-assignment clauses in this collection of documents that make up the plan. And the most important of the issues as far as standing is concerned is that the clause is ambiguous because it is in direct conflict with the claimant may direct clause that is included in the supplemental. I think that's the basic issue, yes. That is the basic issue. All right. And the clause that you're saying creates the conflict, to put it mildly, is that the claimant may direct the Coastwise Claims Office to pay benefits directly to the provider, see assignment of benefits on page 19. Exactly, Your Honor. All right. That clause is in direct conflict, we believe, with the anti-assignment clause. You cannot apply the anti-assignment clause without essentially extinguishing the claimant may direct clause. Well, not necessarily. I mean, the assignment of benefits clause says that where benefits are paid directly to a doctor, such direct payments are provided at the discretion of the trustees as a convenience to plan participants and do not imply an enforceable assignment of welfare benefits or the right to receive such benefits. I certainly have read that language, Your Honor. Yes, I'm sure you have. But why doesn't that say that they are agreeing that they will allow the claimant to have the payments made to the provider without making an assignment to the provider? I'm not sure I understand the point. The claimant may direct clause says that the claimant can direct the plan to make the payment to the provider. Right. The anti-assignment clause. Direct them to make the payments to the provider. Correct. Which they say is done for the convenience of the original beneficiary. So they say that you may direct them to pay it. And if they don't pay it, then they have a breach with the beneficiary. They don't say that it gives any rights to the provider. That is simply not correct. The breach in that case is a breach by the plan in terms of their plan document in connection with the beneficiary. It's a breach of the provision that you, if you tell us, will pay it directly to somebody. That's a breach. Right. But it doesn't say that it authorizes the assignment of the claim. It says you must pay the money to the provider directly. But it doesn't say that that affects the rights. It doesn't say you may make an assignment to the provider. The claimant clearly has the right to make an assignment to the provider, which they did. Why clearly? It says you may direct them to make the payment, but see assignment of benefits clause, which says you may not assign the benefits. Paying the benefits is not the same as assigning the right to the benefits. It is the right to payment that is the very thing that is being assigned, the right to receive the payment. No, it's not being assigned. It's saying we will make the payment directly for you because we're going to accommodate you. We won't mail the check to you, so you then have to mail it to the provider. But it doesn't say we will assign the right to the benefits. In fact, it seems to say, I'm just making an argument. It seems to say we will assign, we will accommodate your desire to make the payment directly, but see the assignment clause of benefits, which says you can't assign the benefits. You can only direct the payment. I guess I do not accept respectfully a distinction between saying that you cannot assign, but at the same time the claimant may direct. If the claimant has the right to direct payment in the direction of the provider, if the claimant has that right, and clearly they do, then that right is something that the plan must follow, irrespective of the fact that they claim anti-assignment based on discretion. They have to send the check to the provider. Right, and they didn't do that. And that may be a breach. And it is a breach. All right, but it's a breach of your promise to the beneficiary. It's a breach of the promise to the beneficiary. But it's not a breach of a duty to assign. It's a breach of a duty to send the payment. Certainly true. But the surgery center stands in the shoes of the beneficiary and has the derivative right to assert the claimant may direct clause just in exactly the same way that the surgery center has the right to assert any other right that the claimant has under the plan. Your Honor seems to be foreclosing the right based on the anti-assignment clause when, in fact, the entire body of rights that the patient has, the member has, are assigned to the surgery center by way of the assignment that exists between the surgery center and the patient. The entire body of rights. Not just any one right. The right to enforce that payment clause is assigned. And we have derivative rights on the enforcement of the payment clause. How are the entire body of rights assigned? Because of what? Because of the written assignment document between the patient and the surgery center, separate and independent from what is written in the plan. In each case, the patient signs a document saying, we assign all of our rights under the plan to the surgery center. How is that permissible in view of the assignment of benefits provision? I'm sorry, I didn't hear that. How can the patient assign all of his rights to the surgery center in view of the assignment of benefits clause on page 17? Because that assignment of benefits clause is in direct conflict with one of the rights that was assigned, which is the claimant may direct clause. So those two clauses. The right to assign comes entirely from that statement that I read, the claimant may direct the Coast Guard's claims office to pay benefits directly to the provider. That's the basis for the right to assign. The basis for the right to assign comes from the agreement, the contract between the patient and the surgery center, which is a separate agreement. How can a right to assign to the provider, to the surgery center, how does that not violate the assignment of benefits clause? It doesn't violate the assignment of benefits clause because it creates a second right that is concurrent with the anti-assignment clause. Now, I do agree, Your Honor, that if the anti-assignment clause was the only thing we'd be talking about, what the court is saying is true. But where you have a contract that has two conflicting provisions, one of them an anti-assignment clause and the other the claimant may direct clause, where you have those two provisions. Your argument that they can assign all of these benefits by some contract between the beneficiary and the provider stems from that one sentence that we've been talking about. Okay. Correct. And I would make a second point with respect to the assignment language between the patient and the surgery center. And the second point is that the assignment language in the contract between the patient and the surgery center contains a separate provision. In addition to assigning all of its rights under the plan to collect payment directly by the provider, the clause also says that in the event that for any reason the assignment is not valid, you, the plan, I direct to pay me directly, the claimant, care of Brands Tarzana Surgery Center. And that has nothing to do with anti-assignment. That second instruction from the patient to the plan is totally outside of the anti-assignment clause. And finally, Your Honor, I would say that the ‑‑ That again has no question of there being a breach if they don't do it. But the question is who can sue it? Judge Nelson said it's a question of standing. Who can sue? And a clause in the assignment between the patient and the surgery center, that contract, a clause that says ‑‑ Yes, but the instruction, there are two instructions in the agreement between the patient and the surgery center. One is I assign all my rights. Okay, Your Honor is suggesting that that is invalidated by the anti-assignment clause. Let's assume it is. Second, the patient says in that event, then the plan needs to pay me. And that is not invalidated by the anti-assignment clause because that's not an assignment. All right. That is simply a breach by the plan. No one is talking about a breach at the moment. Let's assume there's a breach. The beneficiary then has a right to sue. Correct. A breach. But that's different from the surgery center having a right to sue. The surgery center stands in the shoes of the beneficiary and has the derivative right. Why don't you save your two minutes for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Emily Mollio for the ILW-PMA welfare plan. I urge affirmance of the district court's orders in this matter following this court's precedent in Spindex, DB Healthcare, and Davidowitz, all of which depend upon the core principle of ERISA, to enforce plan terms as written. And this is to ensure uniform coverage of benefits for all plan participants and beneficiaries. And for this plan, there are 38,000 longshoremen and other union members who are participants from Bellingham, Washington, to San Diego, California. This is a very large unit. And the parties bargained anti-assignment provision along with every other provision of this plan in order to ensure that each, all of these participants have some of the most generous welfare benefits available. Now, on- No, I'd like you just to, we were talking a lot about how inconsistent these provisions are. Regardless of what the anti-assignment provision says, how is the payment of benefits to a provider of care instead of the patient consistent with the anti-assignment of such benefits? First, based on this court's precedent in DB Healthcare and Spindex, both of which allowed direct payment to providers but nonetheless enforced the anti-assignment clause. So the first answer is unprecedented. Second, the express language of the anti-assignment provision provides that direct payments are made at the discretion of the trustees and do not imply an enforceable assignment. And third, really the core of assignment is who owns the right to sue, who can bring a claim in court, and also who can appeal through the administrative process when a claim is denied. It does not concern where the check may be sent, which is all that direct payment provides. Instead of the check having to go to the participant who would then have to send the check to the provider, as a convenience for that plan member, the check is sent directly to the provider. And I think if I understand the argument of plaintiff's counsel here, it's that they believe that the claims were denied here because the trustees declined to exercise their discretion to pay them directly. However, that is plainly not the case and contradicted by all of the record evidence, including undisputed facts in this case. The basis for which these claims were denied are the basis that were set forth in the explanation of benefits. The reason why it's not that they were denied because the trustees chose not to pay directly is that they were found not to conform with the substantive coverage requirements of the plan. Certainly, it's the sympathetic argument on the other side. You know, if they're allowed to assign the claims, how could that possibly hurt the fund, except that it would be a provider who is far more familiar with these problems and far more capable of obtaining a fair result than the individual union member? Well, I believe there's actually – well, first, again, the policy that's set forth in dividuits enforces anti-assignment provisions. But beyond that, under these circumstances where we have a collectively bargained, self-funded health plan, the participants have a true and meaningful access to these procedures. These include that there are local area welfare directors who are employees of the plan and also I think almost exclusively are longshoremen or were longshoremen before becoming area welfare directors who can guide participants through this process, as well as the fact that the union itself, both at the local level and at the coast level, have benefits specialists and benefits employees who are there to aid participants through this process. And further, as a practical matter, there are many claims that are in place that participants are bringing through the full and fair review process and through to arbitration. Now, additionally, as required under ERISA, the plan would accept authorized representative status for a provider or an attorney who would not own the claim as an S&E would, but who would represent the claimant through the process. And, in fact, that is something that has happened. Though, importantly, that authorized representative has no rights to bring a lawsuit following an adverse benefit determination, but rather stands more like the position that I am from my clients, where my client owns the right and they can choose to engage my services or engage the services of someone else. Thank you. If Your Honors have no further questions, I am happy to answer anything about waiver or estoppel or any of the other matters that are before you. Thank you, Your Honors. The issue of the public policy and whether there is any policy that is served by applying the anti-assignment clause. Let me ask you one question here. I am sympathetic to your argument, but the question here is, do we have binding precedent in this circuit that answers the question? There is no binding precedent that answers this question because there is no case that is ever considered an anti-assignment clause in conjunction with the claimant-made direct clause and the conflict that exists. You said that if there were not this special provision, then the clause would be valid. I think that is potentially true unless the court were to accept estoppel or waiver grounds, and I haven't argued estoppel and waiver. I think it can be a stop to assert it and they've waived it. I think I fully exhausted that in the brief. But on the issue of the contract, on the issue of ambiguity, and on the issue of the legal right and standing, it is the conflict between the claimant-made direct clause and the anti-assignment clause that gives us the right to sue. And we have the right to sue because of that conflict, the anti-assignment clause can't be read by itself. It's ambiguous in the context of the overall plan, and therefore it can't be enforced against the claimant or against Bran-Tarzana because it's ambiguous in the context of the plan. You can have an anti-assignment clause that has the clearest language in the world, but if you have another clause in the same contract that says the claimant may direct the plan to pay the provider directly, the conflict between those two creates an ambiguity and the anti-assignment clause thereby can't be enforced. Thank you. Thank you. The case just argued will be submitted.
judges: D.W. Nelson, Reinhardt, Steeh